**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------------X

ELIZABETH HUGHES,                       Case No.: _____

                 Plaintiff,          **COMPLAINT**

      -against-                      **PLAINTIFF DEMANDS
A TRIAL BY JURY**

JEFFREY BEERS INTERNATIONAL LLC and JEFFREY
BEERS *individually*,

                Defendants.

---------------------------------------------------------------------------X

Plaintiff, Elizabeth Hughes, by her attorney, The Rose Law Group PLLC, hereby brings this action against the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"); the Family medical Leave Act, as codified, 29 U.S.C. § 2601 *et. seq.* ("FMLA"); the New York City Human Rights Law ("NYCHRL"); and the New York State Human Rights Law ("NYSHRL") seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff has suffered as a result of Defendants **discriminating against** her on the basis of her **pregnancy and gender**, and **retaliating against** her for requesting maternity leave, pregnancy accommodation and opposing their illegal policies and practices.

## JURISDICTION AND VENUE

2. Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C. §216(b)). Jurisdiction of this Court is also proper under 29 U.S.C. §§ 2101 *et seq*.

3. Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code § 1367.

4. Venue is proper in this district based upon Defendants' residency within New York County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

5. That at all times relevant hereto, Plaintiff Elizabeth Hughes ("Hughes") was a resident of the State of New York and Kings County.

6. That at all times relevant hereto, Defendant Jeffrey Beers International LLC ("JBI") is a foreign business corporation duly existing pursuant to, and by virtue of, the laws of the State of New York and authorized to do business within the State of New York.

7. That at all times relevant hereto, Defendant Jeffrey Beers ("Beers") is the owner of Defendant JBI.

8. At all times relevant hereto, Defendants' primary place of business was located in New York County, New York.

9. At all times relevant hereto, Defendants employed Plaintiff Hughes.

10. Defendants employed approximately sixty (60) employees during the year prior to Plaintiff Hughes requesting and receiving maternity leave.

## MATERIAL FACTS

11. On October 10, 2013, Plaintiff Hughes was hired by the Defendants as a Senior Interior Designer.

12. Plaintiff Hughes was an excellent worker, was never reprimanded for her work, and always received good performance evaluations.

13. In or around December of 2013, Plaintiff Hughes received a small Christmas bonus just after working for two months as indicative of the high level of work she provided.

14. Plaintiff Hughes received her first end of the year review from the Defendants in December of 2014. The review was positive. Plaintiff Hughes was given a Christmas bonus and received

a raise indicative of the quality of her work.

15. Plaintiff Hughes received her second end of the year review from the Defendants in December of 2015. The review was positive. Plaintiff Hughes was given a Christmas bonus and received a raise indicative of the quality of her work.

16. Plaintiff Hughes received her third end of the year review from the Defendants in December of 2016. The review was positive. Plaintiff Hughes was given a Christmas bonus and received a raise indicative of the quality of her work.

17. Plaintiff Hughes received her fourth end of the year review from the Defendants in December of 2017. The review was positive. Plaintiff Hughes was given a Christmas bonus and received a raise indicative of the quality of her work.

18. In or around April 2018, Plaintiff Hughes received her NCIDQ certification. At the time, Plaintiff Hughes was one of three employees for Defendants holding this certification, one of those others resigned leaving only Plaintiff Hughes and one other in the entire organization.

19. In 2018, Plaintiff Hughes was on a team of three designers interviewed by Princess Cruises in relation to a contract to design their new cruise ships. Plaintiff Hughes was named directly and positively by the client several times during the design meetings because of her successful involvement in three previous Princess Cruise projects.

20. Plaintiff Hughes and her team were successfully able to secure the project.

21. In November of 2018, Plaintiff Hughes was chosen to speak at a panel at BDNY, a large expo for hospitality designers.

22. Plaintiff Hughes received her fifth end of the year review from the Defendants in December of 2018. Plaintiff Hughes was given a raise and a new title as an Associate due to the high quality of her work and exemplary performance.

23. On or about March 8, 2019, Plaintiff Hughes found out she was pregnant.

24. In March of 2019, Plaintiff Hughes was put on bedrest for one week due to her pregnancy. Plaintiff Hughes informed Ms. Costello, Defendants' Executive Vice President, of the matter and asked her for permission to work from home. This request was granted.

25. The following week, Plaintiff Hughes was able to return to the office. Ms. Costello informed Plaintiff Hughes she had to inform Defendant Beers of the matter as well because he was curious as to why Plaintiff Hughes was working from home.

26. In or around May of 2019, Plaintiff Hughes met with Defendant Beers in his office to inform him she was pregnant. During the meeting, Plaintiff Hughes informed Defendant Beers she planned to return to work after maternity leave and she will continue her current projects and responsibilities until her leave.

27. Defendant Beers reacted by congratulating Plaintiff Hughes and discussing his own experience as a father.

28. Around the same time, Plaintiff Hughes met with her team supervisors, Michael Pandolfi and Teddy Acero, to inform them of her pregnancy.

29. From March until July of 2019, Defendant Beers and Plaintiff Hughes were working very closely on a project with Silver Lining Diner and spoke on an almost daily basis.

30. Around the time Plaintiff Hughes's pregnancy began to show, Defendant Beers began to treat Plaintiff Hughes's presence with hostility. Defendant Beers ignored Plaintiff Hughes and looked past her if they passed each other. This was a stark difference from their prior relationship when he was warm and cordial in passing.

31. Plaintiff Hughes spoke to Design Director, Masako Fukuoka, regarding Defendant Beers' changed behavior. Director Masako was a colleague she trusted to discuss her concerns. She explained to Masako that she is worried she will not have a job after she returns from maternity leave because Defendant Beers was completely ignoring her. Masako reassured Plaintiff

4

Hughes that this was not the case and Defendant Beers just "gets weird" around pregnant women.

32. In or around August of 2019, Plaintiff Hughes had a meeting with Ms. Costello regarding maternity leave and her bonus. Plaintiff Hughes explained how she wanted the initial three months off and to then check in after that. In fear of losing her job, Plaintiff Hughes suggested that if needed to keep her job she will come back immediately after the initial three months. Ms. Costello replied, "Lizzy, are you kidding me? You have a job!"

33. Plaintiff Hughes followed up with an email regarding what was discussed in the meeting with Ms. Costello. Ms. Costello came by Plaintiff Hughes desk a couple days later and reassured her that she will not have to worry about losing her job post maternity leave. Ms. Costello, who acts as Defendants' Human Resources department, stated that Defendants are not that corporate, implying that a response to the email was unnecessary. Ms. Costello also reassured Plaintiff Hughes she would receive her Christmas bonus.

34. In or around this time, Plaintiff Hughes asked the junior designer working on their new office space if it included a space which could be used as a pumping room. At the time, there were three (3) women in addition to Plaintiff Hughes who raised this issue as they had or expected to have infants.

35. Upon information and belief, Defendant JBI reluctantly agreed to provide a "wellness" room which was not specifically for pumping, but which could be used for that purpose.

36. Upon information and belief, Defendant JBI was upset with Plaintiff Hughes for insisting that an area be set aside for pumping in his new office, despite the legal requirement.

37. On or about October 17, 2019, Michael Pandolfi and John Henderson met with Plaintiff Hughes. During that meeting they gave a positive review without criticism. They further discussed how Plaintiff Hughes would be given more responsibility and leadership and

        manage more people. Plaintiff Hughes was also complemented on her organized and efficient work.

38. Plaintiff Hughes went into labor and had a daughter on October 27, 2019. She immediately informed Defendants and began her maternity leave.

39. In December of 2019, Plaintiff Hughes received her Christmas bonus via FedEx and a raise of $10,000.00 per year, indicating her high level of performance.

40. On February 4, 2020, Plaintiff Hughes stopped by the Defendants' office to introduce her baby to her colleagues. After her visit, Plaintiff Hughes gave Ms. Costello a call to discuss her return from maternity leave. Together, Plaintiff Hughes and Ms. Costello decided April 16, 2020 would be her return date to the office. They also agreed every Thursday she would work from home until July. This extension of her FMLA time was mutually agreed upon.

41. On March 26, 2020, Plaintiff Hughes called Ms. Costello at 12:43 p.m. to check in. Ms. Costello did not answer the phone. Plaintiff Hughes left a two minute message. At 1:37 p.m. on the same day, Ms. Costello returned Plaintiff Hughes call and they spoke for sixteen minutes. During their phone call they discussed how Defendants could not commit to her return date because there was "no physical office", the office was moving, construction for the new office was delayed, projects were on hold daily, a first round of layoffs occurred, she confirmed that she was not laid off and/or unemployed, and was warned not to speak to a former colleague named Monica who was suing the Defendants for discrimination on the basis of her race and for requesting maternity leave.

42. The sole reason Plaintiff Hughes was not returned to work was because she took pregnancy leave. If she had not, then she would have been working on April 16, 2020.

43. On April 7, 2020, Plaintiff Hughes called Ms. Costello at 2:15 p.m. to check in. Ms. Costello did not answer the phone.

44. On April 8, 2020, Plaintiff Hughes spoke with Ms. Costello for some time. During the call Ms. Costello informed Plaintiff Hughes that they did not know when they could bring her back. She further described how the office was not laying her off and that many people who were less senior remained employed and working during this time.

45. April 16, 2020 came and went without Defendants returning Plaintiff Hughes to work. This was solely due to Plaintiff Hughes's pregnancy, gender, and pregnancy related leave of absence which had been approved by Defendants.

46. On May 4, 2020, Plaintiff Hughes called Ms. Costello at 2:14 p.m. to check in. Ms. Costello did not answer the phone.

47. On May 5, 2020, Plaintiff Hughes emailed Ms. Costello to follow up on her maternity leave and check in. Plaintiff Hughes informed Ms. Costello in the email she filed for unemployment benefits. Ms. Costello responded to Plaintiff's email stating the Defendants were not ready for her to return to work and to continue following up.

48. During this same period of time, less senior and less experienced employees continued to work who were not women, were not pregnant, and had not taken pregnancy leave. The sole reason that Plaintiff Hughes was not working during this time was due to her taking a protected leave of absence related to her pregnancy.

49. On May 11, 2020, Plaintiff Hughes called Ms. Costello at 2:26 p.m. to check in. Ms. Costello did not answer the phone.

50. On May 28, 2020, Plaintiff Hughes called Defendant Beers at 11:16 a.m. to check in. Defendant Beers did not answer the phone. On the same day, Defendant Beers returned Plaintiff Hughes' call. Plaintiff Hughes informed him that she was ready to go back to work and had to file for unemployment benefits due to her financial situation. Defendant Beers refused to return Plaintiff Hughes to work, claiming that they could not afford it. However, at

the same time, less senior male employees and employees who had not taken pregnancy leave continued to work without interruption. The only reason that Plaintiff Hughes was not brought back to work was due to her being out for her pregnancy leave at the time of the shutdown due to Covid-19.

51. On May 28, 2020, Plaintiff Hughes emailed Ms. Costello to follow up on her return from maternity leave. Ms. Costello responded to the Plaintiff stating "I appreciate your desire to return to the office and work, but unfortunately, at this time JBI is extremely slow and we continue to lay-off staff members. We will continue to keep you updated on the status of the firm, but at this time, we have no work for you to start on."

52. This was not true, however, as many of the projects Plaintiff Hughes handled prior to taking leave continued to have work performed on them by males and other employees who had not taken pregnancy leave.

53. On June 5, 2020, Plaintiff Hughes emailed Ms. Costello to follow up on her return date from maternity leave and that she was ready and willing to work.

54. On June 11, 2020, Ms. Costello responded to the Plaintiffs email stating "I will contact you when we you can resume work. As you know, the firm has made significate reductions to our staff and continues to reduce. Hopefully, work will pick up in the next few months and we contact you to discuss your return."

55. Upon information and believe, Defendants had not made "significant reductions to [their] staff" at that time and had in fact received a large PPP loan to continue to employ its staff. At that time, upon information and belief, the sole reason that Plaintiff Hughes was not permitted to return to work was because she had been out of work on maternity leave at the start of the pandemic.

56. On July 10, 2020, Plaintiff Hughes spoke to the office manager, Jenna. They discussed how

8

at least thirty-five people continued to work on weekdays and weekends, the office had yet to move because of problems with the new building, and the new office would not be ready until at least September.

57. Plaintiff called Ms. Costello on the following dates and left a messages without receiving a response: 7/16/2020 at 11:34 a.m., 7/21/2020 at 11:40 a.m., and 8/13/2020 at 2:36 p.m.

58. On August 17, 2020, Plaintiff Hughes called Defendant Beers at 10:18 a.m and left a message.

59. On August 18, 2020, Defendant Beers returned her call, informing her that the world caused a bit of havoc for the office, times are very uncertain and they had to cut back staff, many projects were on hold, and the company could not afford to have any more staff. Plaintiff Hughes suggested to Defendant Beers that she would even be willing to work part-time. Defendant Beers said that he would discuss this with Ms. Costello.

60. At the same time, many less senior male employees and employees who had not taken pregnancy leave continued to work full time. Upon information and belief, had Plaintiff Hughes not taken pregnancy leave she would have continued working throughout this period.

61. On August 18, 2020, Ms. Costello called Plaintiff Hughes to discuss her return from maternity leave and possibly working part-time. During this conversation, Ms. Costello even discussed moving Plaintiff Hughes into a Design Director role upon her return. Ms. Costello informed Plaintiff Hughes that she was trying to "safe-guard" her position with the company because the Defendants want her at the firm but had no work to give her at that time.

62. Ms. Costello explained further that the PPP Loan did not exist and continued to reassure the Plaintiff that she would get her job back.

63. Upon information and belief, Defendants received a multi-million dollar PPP loan and certified that they were retaining fifty-eight jobs with the funds.

64. On October 8, 2020, Plaintiff Hughes emailed Ms. Costello to follow up regarding her return

date from maternity leave and to congratulate the Defendants on the new office. On the same day, Ms. Costello replied to the Plaintiffs email stating "The new space is looking good and we still have a bunch of work to complete with the contractor, but, we hope to be in by the end of October/early November. As I learn more, I will keep you posted, as of now we are continuing to work remotely."

65. On October 14, 2020, Plaintiff Hughes emailed both Defendant Beers and Ms. Costello, "I cannot continue to remain on leave any longer. I have been requesting to return from my FMLA protected medical leave since April 16. I have also been available to work remotely since April 16. Please provide me a date I can return. I am amenable to a temporary part-time reduction of hours."

66. This email constituted a complaint about the ongoing illegal actions by Defendants in refusing to return her to work following her FMLA leave and discriminatory treatment following her pregnancy leave.

67. The very next day after Plaintiff Hughes complained about her not being returned to work due, Defendants determined to terminate her employment, drafting a termination letter and preparing to send it.

68. On October 20, 2020, Ms. Costello responded to the Plaintiffs email stating "Thank you for your note and Jeff and I will reach out shortly."

69. On October 25, 2020, Ms. Costello terminated Plaintiff Hughes via email. The email stated "In an effort to improve the ongoing financial stability of Jeffrey Beers International, it has become necessary for JBI to scale back or eliminate certain positions at the firm. Unfortunately, effective today your position at JBI is included in these overall staff reductions."

70. On October 25, 2020, Plaintiff Hughes received a letter of termination.

71. While several other employees were terminated on the same day, all had less experience, had been with the firm less time, and none had the NCIDQ certification. Defendants were attempting to put Plaintiff Hughes into a group of terminations to hide their illegal motivation.

72. On October 25, 2020, Plaintiff Hughes emailed the Defendants requesting her personal belongings be mailed to her. On the same day, Ms. Costello replied to the Plaintiff's email reassuring her that her belongings and work samples will be mailed to her.

73. Plaintiff Hughes was terminated due to her gender, pregnancy and/or in retaliation for her requesting and taking maternity leave.

74. Further, she was terminated immediately after complaining about not being returned to work due to her pregnancy. The termination was retaliatory for that complaint.

75. Defendants were aware that Plaintiff Hughes was pregnant and she had already requested time off due to the pregnancy which was protected under Title VII (pregnancy), the FMLA, the NYCHRL, and the NYSHRL. The termination was due to her pregnancy and motivated by discriminatory animus against pregnant employees.

76. Defendants discriminated against Plaintiff Hughes due to her pregnancy and/or the perception that she had a pregnancy related disability.

77. Defendants were aware that their actions violated the law.

78. As a result of the acts and conduct complained of herein, Plaintiff Hughes has suffered a loss of income, bonus, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

79. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Liquidated and Punitive Damages.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
## (Solely against the Corporate Defendant)

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., for relief based upon the unlawful employment practices of the above-named Defendant.

82. Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's pregnancy and gender.

83. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff because of her pregnancy and gender.

## AS A SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
## (Solely against the Corporate Defendant)

84. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

    "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter."

86. Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment due to her requests for pregnancy related accommodations and opposition to the unlawful employment practices of Defendant.

## AS AN THIRD CAUSE OF ACTION
## RETALIATION & INTERFERENCE UNDER THE
## FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 *et. seq*.
### (Against All Defendants)

87. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

88. § 2615 of the Act states as follows:

    a. Interference with rights

        (1) Exercise of rights

           It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

        (2) Discrimination

           It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

89. Defendant interfered with Plaintiff's rights under the above section and discriminated against Plaintiff and discharged Plaintiff from her employment for exercising her rights thereunder.

90. Defendant failed to return Plaintiff to work following the exercising of her rights under the FMLA.

91. Defendant further discriminated against Plaintiff by terminating her employment for complaining of and opposing their unlawful practices.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
### (Against all Defendants)

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

13

93. The Administrative Code of City of New York §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the **actual or perceived** age, race, creed, color, national origin, **gender**, **disability,** marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

94. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by discriminating against Plaintiff because of her pregnancy, gender and/or pregnancy accommodation.

### AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Against all Defendants)

95. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

96. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

97. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's requested pregnancy and pregnancy accommodation.

### AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE (Against all Defendants)

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. The New York City Administrative Code §8-107(19) states that it shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

100. Defendants violated the section cited herein as set forth.

## AS A SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (Against all Defendants)

101. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

102. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

103. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her pregnancy, gender, and pregnancy accommodation.

## AS A EIGHTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW
## (Against all Defendants)

104. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

105. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under

this article."

106. Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because she requested pregnancy accommodation and opposed Defendants' illegal practices.

## JURY DEMAND

107. Plaintiff demands a trial by jury.

**WHEREFORE,** Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practices prohibited by Title VII, the FMLA, the NYCHRL and the NYSHRL by discriminating against and retaliating against Plaintiff on the basis of her disability, pregnancy, request for leave, and/or pregnancy accommodation;

B. Declaring that Defendants' policies and procedures violate Title VII, the FMLA, the NYCHRL and the NYSHRL;

C. Awarding damages to the Plaintiff for all lost wages and benefits resulting from Defendants' unlawful termination and to otherwise make her whole for any losses suffered as a result of such unlawful employment practice;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E. Reinstating Plaintiff to her position with all lost pay, seniority, benefits, and other remuneration which she would have received had she not been illegally terminated;

F. Awarding Plaintiff punitive and liquidated damages;

G. Awarding Plaintiff attorney's fees, costs, pre-judgment interest, post-judgment interest, and expenses incurred in the prosecution of the action; and,

H. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
April 7, 2021

/s/Jesse C. Rose
Jesse C. Rose
The Rose Law Group PLLC
3272 Steinway Street
Suite 503
Astoria, New York 11103
(718)989-1864
Jrose@theroselawgroup.com